Motion for Rehearing Overruled; Affirmed; Opinion of March 15, 2005
Withdrawn; Opinion on Rehearing filed June 9, 2005









Motion for Rehearing Overruled; Affirmed; Opinion of March 15, 2005 Withdrawn; Opinion
on Rehearing filed June 9, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00495-CR

 

DINH TAN HO, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 263rd
District Court

Harris County, Texas

Trial Court Cause No. 898,188

 



 

O P I N I O N   O N  
R E H E A R I N G[1]








This is an appeal from a murder
conviction.  Appellant Dinh Tan Ho argues in seven issues
that the trial court erred by (1) denying appellant=s motion for
continuance, (2) admitting appellant=s alleged
co-actors= recanted statements to police, (3)
admitting extraneous offense evidence, (4) improperly limiting appellant=s Sixth Amendment
right to confrontation, (5) admitting evidence of appellant=s gang membership
during the punishment phase of trial, (6) denying appellant=s motion for
mistrial, and (7) denying appellant=s motion for new
trial.  We affirm.

Background

In the early hours of December 7, 2001,
David Bundy, Eric Harrison, Bayard Hill, Mike Miller, and Jabare Rattler left a
downtown Houston nightclub and headed home. 
All five men rode in Harrison=s vehicle, which
Bundy drove.  While still downtown, a
blue Honda Civic occupied by three Asian men abruptly cut in front of Harrison=s car, nearly
causing a collision.  At the next
stoplight, Rattler began shouting obscenities toward the Civic and even got out
of the car at one point to yell.  After
the light turned green, Bundy drove toward Highway 59, and the men eventually
lost sight of the Civic.

Harrison testified that while traveling on
Highway 59, he again saw the Civic as it approached Harrison=s car from the
right rear.  Immediately thereafter, one
of the passengers of the Civic fired multiple gunshots at Harrison=s car.  Bundy was shot and killed; Hill, Miller, and
Rattler were also hit by gunshots. 
Rattler later identified appellant in a photo lineup as the shooter.
Rattler and Miller identified Jay Le as the driver, and Harrison identified the
blue Civic owned by Le as the car from which the shots were fired.  

At trial, the State theorized that
appellant was the shooter, Le the driver, and Richard Hoang the backseat
passenger of Le=s Civic. 
After the shooting, Le and Hoang both made statements to police that
they were not with appellant at the time of the shooting and that appellant had
admitted to shooting some people on the freeway.  Both men recanted their statements that
appellant admitted to the shooting, but maintained that they were not with
appellant when the shooting occurred.  Le
testified that appellant had borrowed his car during at least the first two
weeks of December 2001 and was in possession of it during the time of the
shooting.  A jury convicted appellant of
murder and assessed punishment of fifty years= imprisonment and
a $10,000 fine.








Motion for Continuance

In his first
issue, appellant contends that the trial court erred in denying his motion for
continuance.[2]  Three days before trial began, appellant
filed a motion for continuance due to an absent witness.  The trial court denied this motion on the day
the trial began.  At the close of
evidence, appellant re-urged his motion for continuance, which the court again
denied.  Appellant complains this was an
abuse of discretion.








Article 29.06 of the Code of Criminal
Procedure requires that a motion for continuance based on the absence of a
witness must, among other things, state A[t]he diligence which
has been used to procure [the witness=s] attendance.@  Tex.
Code Crim. Proc. Ann. art. 29.06 (Vernon 1989).  The Court of Criminal Appeals has interpreted
this to mean not only diligence in procuring the presence of the witness, but
also diligence as reflected in the timeliness with which the motion for
continuance was presented.  Dewberry
v. State, 4 S.W.3d 735, 756 (Tex. Crim. App. 1999); see also Gonzales v.
State, 505 S.W.2d 819, 821 (Tex. Crim. App. 1974) (finding that a motion
for continuance due to an absent witness filed on the first day of trial does
not show diligence).  Similarly,
diligence must be shown in  applying for
a subpoena for the absent witness.  See
Varela v. State, 561 S.W.2d 186, 190 (Tex. Crim. App. 1978) (holding that
application for subpoena filed a day or two before trial does not show
diligence).  Further,  the Court of Criminal Appeals has long
found that diligence in procuring the witness is not shown if several months
have passed between the issuance of the indictment and the filing of an
application for subpoena.  See, e.g.,
Welch v. State, 219 S.W.2d 804, 805B06 (Tex. Crim.
App. 1949) (holding that appellant who allowed eight months to pass after
filing of indictment before applying for process to issue for absent witness
showed a lack of diligence); Fuller v. State, 270 S.W. 169, 170 (Tex.
Crim. App. 1925) (finding appellant showed insufficient diligence in locating
absent witnesses where appellant permitted over six months to pass before
applying for process to issue); see also Dewberry, 4 S.W.3d at 756
(finding lack of diligence where counsel knew of absent witness=s importance two
months before trial but did not attempt to subpoena witness until after trial
had started).

Here, appellant was indicted on January 3,
2002.  Phuong Vu=s affidavit
explaining that he was with appellant on the night of the shooting was taken
six days later, on January 9, 2002. 
Appellant filed the motion for continuance on April 11, 2003, just three
days before trial began and after the trial date had been reset three
times.  Appellant applied for a subpoena
for Vu approximately two weeks before trial, on March 28, 2003, even though
appellant knew of Vu=s potential importance as a witness long
before this date.  Ultimately, appellant
waited almost fifteen months after being indicted before applying for a
subpoena for Vu.  We find that appellant
has failed to meet the requirement of diligence as required by article 29.06.








Also, the record does not indicate a
probability that Vu=s presence would have been secured had the
trial court granted the continuance. 
According to the affidavit attached to the initial motion for
continuance, appellant=s investigator first attempted to serve Vu
with the subpoena on April 1, 2003. 
Three weeks later and ten days after the initial motion for continuance,
appellant renewed the motion at the close of evidence on April 21, 2003.  In denying the renewed motion, the trial
judge indicated that he did not want to grant a continuance for a person who
may never show up.  These circumstances
do not present compelling grounds for a continuance.  See Rodriguez v. State, 21 S.W.3d 562,
566 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d).  We find that the trial court did not abuse
its discretion in denying appellant=s motion for
continuance; accordingly, we overrule appellant=s first issue.

Recanted
Statements and Extraneous Offense Evidence

Appellant argues in his second and third
issues that certain evidence admitted at trial violated Rules 401 and 403 of
the Texas Rules of Evidence.  See Tex. R. Evid. 
401, 403.  In his second
issue, appellant contends that the trial court erred in admitting evidence of
prior statements made to police by Le and Hoang, whom the State contends were
with appellant at the time of the shooting. 
In his third issue, appellant argues that the trial court erred in
admitting evidence of extraneous offenses; specifically, appellant complains of
testimony regarding a bullet hole found in Le=s car and evidence
that appellant discussed a shooting and demonstrated shooting a gun outside Le=s grandmother=s house a few
hours after the freeway shooting. 
Appellant contends that this evidence is not relevant under Rule 401 and
that its prejudicial effect outweighs its probative value under Rule 403.

Recanted Statements by Le and Hoang

In unsworn statements given to police
after the shooting, Le and Hoang both stated that they were not with appellant
at the time of the shooting and that appellant admitted to shooting at some
people on the freeway.  At Le=s trial for his
involvement in the shooting, which occurred a few weeks prior to appellant=s trial, both men
apparently recanted their statements that appellant had admitted being involved
in a shooting.  Over appellant=s objection, the
trial court permitted the State to question Le and Hoang about their statements
provided that the State made it clear that Le and Hoang had recanted the
statements.  On appeal, appellant argues
that the trial court=s admission of testimony regarding the
recanted statements violates Rules 401 and 403 of the Texas Rules of Evidence.








Under Rule 401, evidence is relevant if it
has Aany tendency to
make the existence of any fact that is of consequence to the determination of
the action more probable or less probable than it would be without the
evidence.@  Tex. R. Evid. 401.  AEvidence need not
by itself prove or disprove a particular fact to be relevant; it is sufficient
if the evidence provides a small nudge toward proving or disproving some fact
of consequence.@  Stewart
v. State, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004).

The State=s theory at trial
was that Le and Hoang were with appellant when the shooting occurred.  Evidence that both Le and Hoang made
statements to police that appellant admitted to being involved in a freeway
shooting and later recanted them is relevant. 
The statements, even if recanted, indicate that Le and Hoang had
knowledge that a freeway shooting had occurred. 
The statements also show Le=s and Hoang=s willingness to
implicate appellant in order to exonerate themselves.  Evidence that shows Le=s and Hoang=s knowledge of the
shooting and their willingness to implicate appellant is relevant because it
makes the State=s theory that all three men were involved
more probable than the theory would be without the evidence. 

Under Rule 403, relevant evidence may be
excluded if its probative value is substantially outweighed by its prejudicial
effect.  See Tex. R. Evid. 403.  Rule 403 favors admissibility of relevant
evidence, and the presumption is that relevant evidence will be more probative
than prejudicial.  Montgomery v. State,
810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh=g).  The burden is on the opponent of the
proffered evidence to demonstrate the negative attributes of the evidence and
to show how these negative attributes substantially outweigh the probative
value of the evidence.  Id.  An appellate court will reverse a trial
court=s decision to
admit certain evidence only for an abuse of discretion, that is, when the trial
court=s decision falls
outside the zone of reasonable disagreement. 
Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).








At a hearing outside the presence of the
jury, the trial court insisted that if the State wanted to introduce evidence
of the statements, the State must also make it clear that the statements had
been recanted.  The State did this; Le
and Hoang both testified that they had fabricated the statements because they
were scared.  Hence, the jury was not
given the impression that Le and Hoang still maintained that appellant had
admitted the shooting to them.  Appellant
argues that evidence of the statements impressed the jury in an irrational way,
but appellant has not demonstrated that the negative attributes of these
statements substantially outweigh their probative value.  We do not find that the trial court abused
its discretion in admitting testimony regarding the statements.  Accordingly, we overrule appellant=s second issue.

Bullet Hole Evidence

Le=s Civic had a
bullet hole in the top of the door frame. 
Appellant=s theory was that the hole did not come
from the incident on the freeway, but rather from a drive-by shooting at a
café, which occurred a week before the freeway shooting.  The café shooting allegedly also occurred while
appellant had possession of Le=s car. A motion in
limine was granted prior to trial regarding any evidence of the café
shooting.  The State contends the bullet
hole could have occurred during the freeway shooting.








During the testimony of Wayne Wendel, a
detective with the Houston Police Department who investigated the freeway
shooting, the State asked whether Wendel found any bullet holes in Le=s car.  Appellant objected, arguing that the evidence
was not relevant and violated Rule 403 because the bullet hole could not be
tied to the freeway shooting and had actually occurred during the café
shooting.  The trial court allowed the
testimony as long as the prosecutor did not introduce evidence of the café
shooting.  Wendel testified that Le told
him about the bullet hole during their interview about two weeks after the
freeway shooting.  Wendel had examined the
bullet hole in the car and testified that he believed it had come from a shot
being fired from inside the car, but he did not speculate as to whether the
bullet hole occurred during the freeway shooting.  Later, Le testified that appellant had
borrowed his car in early December and that appellant admitted that the car had
a bullet hole in it when he returned the car to Le, which was after both the
café and freeway shootings.

As previously discussed, evidence is
relevant if it has Aany tendency to make the existence of any
fact that is of consequence to the determination of the action more probable or
less probable than it would be without the evidence.@  Tex.
R. Evid. 401.  Harrison identified
Le=s car as the
vehicle from which the shots were fired. 
Le testified that the bullet hole was caused at some point in early
December 2001 when appellant borrowed Le=s car.  We find that the existence of a bullet hole
in Le=s car has a
tendency to make the fact that Le=s car was involved
in the freeway shooting more probable and is thus relevant under Rule 401.

Under Rule 403, relevant evidence may be
excluded if its probative value is substantially outweighed by its prejudicial
effect.  See Tex. R. Evid. 403.  The existence of the bullet hole is relevant
in establishing the involvement of Le=s car in the
freeway shooting.  Appellant contends
that evidence of the bullet hole is unfairly prejudicial because the bullet
hole occurred during the café shooting. 
This is the same argument asserted by appellant as to why the bullet
hole is not relevant.  However, there is
no definitive evidence that the bullet hole occurred during the café
shooting.  Further, the jury never heard
any mention of the café shooting during the guilt-innocence phase.  Because the jury did not know about the café
shooting, we find that the bullet hole evidence could not have been unfairly
prejudicial to appellant.  Appellant was
free to cross-examine witnesses to establish that the bullet hole might have
been caused during the café shooting; however, appellant chose not to risk
introduction of this topic to the jury. 
Appellant has failed to overcome the presumption that evidence of the
bullet hole was more probative than prejudicial.  Accordingly, we find that the trial court did
not abuse its discretion in admitting evidence of the bullet hole in Le=s car.

Shooting Discussion








Both Le and Hoang claim they were watching
a movie at Le=s grandmother=s house in the
early hours of December 7, 2001, when appellant arrived at the house in Le=s car.  Hoang testified that he and appellant
discussed a shooting as they stood outside the house.[3]  Appellant also demonstrated shooting a gun
with his hands during the conversation. 
As with the bullet hole evidence, appellant argues that evidence of the
shooting discussion violates Rules 401 and 403 because the discussion and
demonstration were about the café shooting, not the freeway shooting.

Appellant has not preserved this subissue
for appeal.  At trial, appellant=s counsel objected
that the prosecutor=s questions to Hoang were leading and also
mentioned Rule 404(b) in a discussion with the trial judge; now appellant
argues that this evidence violates Rules 401 and 403.  Because the issue on appeal must correspond
with the objection made at trial, appellant has not preserved error here.  See Heidelberg v. State, 144 S.W.3d
535, 537 (Tex. Crim. App. 2004); Fuller v. State, 827 S.W.2d 919, 928
(Tex. Crim. App. 1992).

We overrule appellant=s third issue.

Limitation on
Cross-Examination

In his fourth issue, appellant contends that
the trial court violated his Sixth Amendment rights by improperly limiting
cross-examination.  The trial court
refused to allow appellant to cross-examine State=s witnesses
Rattler and Miller after an alleged confrontation occurred outside of the
courtroom between Rattler, Miller, appellant=s parents, and
appellant=s girlfriend.[4]








The State claims that appellant failed to
preserve error on this issue, but we disagree. 
When a trial court denies a defendant the opportunity to Aelicit certain
specific responses from a State=s witness,@ error is
preserved by (1) calling the witness to the stand outside the presence of the
jury and asking specific questions or (2) making an offer of proof that
demonstrates what questions would have been asked and the expected answers to
those questions.  See Koehler v. State,
679 S.W.2d 6, 9 (Tex. Crim. App. 1984); Stults v. State, 23 S.W.3d 198,
203 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d).  AHowever, when the
trial court denies a defendant the opportunity to question a witness for the
State in the presence of the jury about an entire subject matter that might
have shown [the witness] lacked credibility, such as malice, ill will, motive,
or bias, defense counsel preserves error by stating the subjects on which he
intends to question the witness.@  Stults, 23 S.W.3d at 204.  Here, appellant desired to cross-examine
Rattler and Miller regarding the out-of-court confrontation in order to
establish bias against and animosity toward appellant.  The record reflects that appellant requested
permission to cross-examine Rattler and Miller for that purpose and that the
trial court denied this request.  Because
appellant stated the subject about which he intended to question the witnesses,
appellant has preserved this issue for review.

We review a trial
court=s decision to
limit cross-examination under an abuse of discretion standard.  Love v. State, 861 S.W.2d 899, 903
(Tex. Crim. App. 1993).  An abuse of
discretion occurs when the trial court acts without reference to any guiding
rules or principles.  Montgomery v.
State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).








The Confrontation
Clause of the U.S. Constitution guarantees a defendant the right to
cross-examine witnesses.  See U.S.
Const. amend. VI; Delaware v.
Van Arsdall, 475 U.S. 673, 678 (1986); Carroll v. State, 916 S.W.2d
494, 496B97 (Tex. Crim.
App. 1996).  A defendant may
cross-examine a witness on any subject Areasonably
calculated to expose a motive, bias[,] or interest for the witness to testify.@  Carroll, 916 S.W.2d at 497.  AHowever, the trial
court has considerable discretion in determining how and when bias may be
proved, and what collateral evidence is material for that purpose.@  Recer v. State, 821 S.W.2d 715, 717
(Tex. App.CHouston [14th Dist.] 1991, no pet.).  The trial court has the discretion to limit
the scope of cross-examination to avoid harassment, prejudice, confusion of the
issues, endangering the witness, and the injection of cumulative or collateral
evidence.  Van Arsdall, 475 U.S.
at 679; Stults, 23 S.W.3d at 204. 
This limitation does not violate the defendant=s Aright to confront
a witness as long as (1) the possible bias and motive of the State=s witness is clear
to the trier of fact and (2) the accused has otherwise been afforded an
opportunity for a thorough and effective cross-examination.@  Stults, 23 S.W.3d at 204.

The trial judge
explained that he would not allow appellant to cross-examine Rattler and Miller
regarding the out-of-court incident because the jury could already understand
that these two men would have animosity for appellant if they believed that
appellant had shot at them and killed one of their friends.  We agree with the trial court=s assessment.  Because the possible bias of Rattler and
Miller was clear to the jury and becauseCas appellant
admitsCappellant=s
cross-examination was not otherwise limited by the trial court, we find that
appellant=s confrontation rights were not violated
and that it was not an abuse of discretion by the trial court to limit
appellant=s cross-examination of Rattler and Miller.
 Accordingly, we overrule
appellant=s fourth issue.

Evidence of Gang Membership








Appellant argues
in his fifth issue that the trial court erred by admitting evidence of
appellant=s gang membership during the punishment
phase of trial.  Three witnesses
testified that appellant was at one time a member of a street gang called the
Natoma Boys.  Le testified that appellant
told Le that he was a member of the Natoma Boys, and Hoang said that appellant
had a reputation for being in the Natoma Boys. 
Charlie Cash, a member of the Houston Police Department specializing in
Asian crime, testified that the Houston Police Department documents members of
gangs as it becomes aware of them and that appellant was a documented member of
the Natoma Boys.

During the
sentencing phase of trial, Aevidence may be
offered . . . as to any matter the court deems relevant,@ including
evidence of the defendant=s reputation or character.  Tex.
Code Crim. Proc. Ann. art. 37.07, ' 3(a)(1) (Vernon
Supp. 2004B2005). 
Evidence of a defendant=s gang membership
is relevant because it relates to character. 
Beasley v. State, 902 S.W.2d 452, 456 (Tex. Crim. App. 1995); Aguilar
v. State, 29 S.W.3d 268, 270 (Tex. App.CHouston [14th Dist.]
2000, no pet.).  The types of
activities in which the gang is involved must also be presented to the jury, so
that they may determine if the defendant=s gang membership
is a positive or a negative character trait. 
Beasley, 902 S.W.2d at 456. 
If the gang is involved in misconduct or illegal activity, it is not
necessary to link the defendant to the bad acts if the jury is A(1) provided with
evidence of the defendant=s gang membership, (2) provided with
evidence of character and reputation of the gang, (3) not required to determine
if the defendant committed the bad acts or misconduct[,] and (4) only asked to
consider reputation or character of the accused.@  Id. at 457.

Appellant argues
that the trial court erred in admitting evidence of his membership in the
Natoma Boys gang because it was not established that appellant was a member of
the gang at the time of the shooting. 
The State presented testimony from three witnesses that appellant was a
member of Natoma Boys from around 1997 through at least 2000.  Officer Cash testified that during this time
period the Natoma Boys gang was responsible for at least seven murders in
Harris County, as well as robberies, drive-by shootings, and witness
tampering.  Even if appellant was no
longer affiliated with the gang at the time of the shooting, evidence that he
was a gang member is relevantCand thus
admissible at punishmentCbecause it relates to his character.  See Tex.
Code Crim. Proc. Ann. art. 37.07, ' 3(a)(1); Beasley,
902 S.W.2d at 456.  Appellant=s fifth issue is
overruled.








Motion for Mistrial

In his sixth
issue, appellant argues that the trial court erred in denying his motion for
mistrial.  When Officer Cash testified
about appellant=s gang membership during the punishment
phase, the prosecutor asked him whether appellant had admitted to being in a
gang.  The following exchange occurred:

Cash:           Well, during the interview, I brought up the things I knew
he was involved in and he didn=t deny it.

Prosecutor:  That=s in the interview of this?

Cash:           Right.

At this point,
appellant=s counsel objected and moved for a
mistrial on the grounds that testimony about appellant=s post-arrest
silence is a violation of section 38.22 of the Code of Criminal Procedure.  See Tex.
Code Crim. Proc. Ann. art. 38.22 (Vernon 2005).  The trial court overruled appellant=s motion for
mistrial and instructed the jury to disregard the answer given by Cash.[5]








The denial of a
motion for mistrial is reviewed under an abuse of discretion standard.  Trevino v. State, 991 S.W.2d 849, 851
(Tex. Crim. App. 1999).  AOnly when it is
apparent that an objectionable event at trial is so emotionally inflammatory
that curative instructions are not likely to prevent the jury being unfairly
prejudiced against the defendant may a motion for mistrial be granted.@  Bauder v. State, 921 S.W.2d 696, 698
(Tex. Crim. App. 1996).  An instruction
to disregard an improper comment on appellant=s post-arrest
silence is generally sufficient to cure any harm.  See Dinkins v. State, 894 S.W.2d 330,
356 (Tex. Crim. App. 1995); Hyett v. State, 58 S.W.3d 826, 833 (Tex.
App.CHouston [14th
Dist.] 2001, pet. ref=d). 
In the instant case, because the trial court issued a prompt instruction
to disregard and because the jury had already heard testimony from Le and Hoang
regarding appellant=s gang membership, we find that Officer
Cash=s comment on
appellant=s post-arrest silence did not unfairly
prejudice the jury against appellant. 
Accordingly, we find that the trial court=s denial of
appellant=s motion for mistrial was not an abuse of
discretion, and we overrule appellant=s sixth issue.

Motion for New Trial

In his seventh
issue, appellant argues that the trial court abused its discretion by denying
appellant=s motion for new trial.  In the motion, appellant sought a new trial
based on newly discovered evidence. 
Appellant explained that he determined the whereabouts of Josh Gumbayan
and that Gumbayan is an alibi witness for the unadjudicated extraneous murder
of Thao Lam, which, during the punishment phase, the State argued appellant
committed.

Article 40.001 of
the Code of Criminal Procedure provides that A[a] new trial
shall be granted an accused where material evidence favorable to the accused
has been discovered since trial.@  Tex.
Code Crim. Proc. Ann. art. 40.001 (Vernon Supp. 2004B2005).  Before a new trial based on newly discovered
evidence will be granted, the following four-part test must be satisfied:

(1) [T]he newly discovered evidence
was unknown or unavailable to the movant at the time of his trial; (2) the
movant=s failure to discover or obtain the
evidence was not due to a lack of diligence; (3) the new evidence is admissible
and is not merely cumulative, corroborative, collateral, or impeaching; and,
(4) the new evidence is probably true and will probably bring about a different
result on another trial.

Keeter v. State, 74 S.W.3d 31, 36B37 (Tex. Crim.
App. 2002).  The trial court has the
discretion to decide whether a new trial should be granted based on newly
discovered evidence; absent an abuse of discretion, its decision will not be
reversed.  Id. at 37.








Appellant received
notice of the State=s intention to introduce evidence
regarding the murder of Lam more than a month prior to the beginning of
trial.  Appellant asserts that he did not
attempt to contact Gumbayan before trial because he never anticipated this case
would reach the punishment phase where evidence of Lam=s murder could be
introduced.  Appellant also claims that
he did not remember that Gumbayan could be an alibi witness until after
trial.  We find that appellant has not
met at least the first two requirements of the four-part test provided in Keeter.  Appellant has not shown that the whereabouts
of Gumbayan were unavailable to him at the time of trial.  Further, appellant was on notice that the
State intended to introduce evidence of Lam=s murder, but
appellant did not exercise diligence in obtaining Gumbayan=s testimony.  See Zamora v. State, 647 S.W.2d 90, 95
(Tex. App.CSan Antonio 1983, no pet.) (finding lack
of diligence when appellant knew about witness but chose not to inform
attorney); Langley v. State, No. 14-01-00484-CR, 2002 WL 1041035, at *2
(Tex. App.CHouston [14th Dist.] May 23, 2002, pet.
ref=d) (not designated
for publication) (finding lack of diligence where appellant took no action in
discovering what sort of testimony witness could offer despite knowing witness=s identity before
trial).  Accordingly, the trial court did
not err in denying appellant=s motion for new
trial.  Appellant=s seventh issue is
overruled.

The judgment of
the trial court is affirmed.

 

 

 

___________________________         

Leslie Brock Yates

Justice

 

 

 

 

Judgment rendered
and Opinion on Rehearing filed June 9, 2005.

Panel consists of
Justices Yates, Edelman, and Guzman.








Publish C Tex. R. App. P. 47.2(b).











[1]  Our opinion of
March 15, 2005, is withdrawn and this opinion is substituted in its place.





[2]  The State
argues that this issue is not preserved for review because appellant did not
complain of the denial of the motion for continuance in his motion for new
trial.  However, Rule 21.2 of the Texas
Rules of Appellate Procedure provides that A[a]
motion for new trial is a prerequisite to presenting a point of error on appeal
only when necessary to adduce facts not in the record.@  Tex. R. App. P. 21.2.  Because all facts necessary to address the
motion for continuance are in the record, appellant was not required to
complain of the denial of the motion for continuance in his motion for new
trial in order to preserve this issue for review.  See id.  We do, however, acknowledge that there are
cases from the Court of Criminal Appeals that have not been overruled that
require a motion for new trial to be filed in order to preserve the denial of a
motion for continuance issue for review. 
See, e.g., Taylor v. State, 612 S.W.2d 566, 569
(Tex. Crim. App. [Panel Op.] 1981) (AThe only
means of preserving error in the overruling of a motion for continuance due to
an absent witness is a motion for new trial.@).





[3]  During the
guilt-innocence phase, Hoang did not specify which shooting he and appellant
discussed.  Hoang initially told police
that appellant told him about the freeway shooting while they were in front of
Le=s grandmother=s house,
but Hoang recanted that statement.  Hoang
testified during the punishment phase that the discussion in front of the house
was about the café shooting.





[4]  In his brief,
appellant states that the parties involved in the out-of-court confrontation
were Miller, Rattler, appellant, appellant=s
parents, and appellant=s girlfriend. 
Whether appellant was actually involved in the confrontation is unclear.  During the discussion of the confrontation,
one of appellant=s lawyers informed the judge that the reference to AMr. Ho@ by co-counsel 
referred to appellant=s father, to which co-counsel added, AI=m sorry, I didn=t mean
the defendant.  I mean the dad.@  This
discrepancy is immaterial as appellant=s
presence or absence at this confrontation does not affect our disposition of
this issue.





[5]  In his brief,
appellant also argues that the motion for mistrial should have been granted
because the prosecutor=s questions were an intentional violation of a motion
in limine granted before trial.  At
trial, however, appellant did not assert violations of the motion in limine as
a basis for mistrial.  Because appellant
did not object to the prosecutor=s
questions as violative of the motion in limine, error has not been preserved. See
Tex. R. App. P. 33.1; Geuder
v. State, 115 S.W.3d 11, 14B15 (Tex. Crim. App. 2003) (AA trial judge=s grant
or denial of a motion in limine is a preliminary ruling only and normally
preserves nothing for appellate review.@).